**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0197n.06
Filed: April 16, 2008

06-5283

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CHRISTIAN O. MUNGUIA, also known as | ) | EASTERN DISTRICT OF TENNESSEE |
| Christian Mungilla-Sorrento, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: KEITH, DAUGHTREY, and ROGERS, Circuit Judges.

PER CURIAM. The defendant, Christian O. Munguia, was convicted by a jury of conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). On appeal, he contends that the district court erred by: (1) denying his motion *in limine* to exclude certain evidence relating to cell-phone numbers; (2) admitting evidence of witnesses' cell phone contact lists and logs over his hearsay objection; and (3) denying his post-trial motion for a material-witness warrant in order to support his motion for a new trial. We find no reversible error and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Munguia was jointly indicted on a charge of conspiracy to distribute methamphetamine with three co-defendants, Charlie Stevenson, Vernon Whaley and Frederico Lopez-Galardo, all three of whom pleaded guilty. Two, Stevenson and Lopez, testified against Munguia at trial. Lopez told the jury that he was engaged in delivering drugs for the defendant when he was caught and arrested on July 15, 2004. After his arrest, he made a recorded telephone call to Munguia regarding the transaction. Due to recording problems, much of the defendant's side of the conversation was inaudible, but a translator (the conversation was in Spanish) was able to identify the phrase "at what time" followed shortly by "the money," and Lopez explained that Munguia was asking whether Lopez had gotten the money for the drugs he was supposed to deliver. Stevenson, who had been arrested one day earlier than Lopez, testified that he was part of a group that included Munguia and Whaley and that the group was involved in the distribution of methamphetamine. He identified Munguia as the source of the drugs. In addition, an unnamed co-conspirator, Denise Arellano, testified at trial that she was arrested in June 2004 while carrying drugs from Munguia to Whaley.

To corroborate the co-conspirators' testimony, the prosecution offered evidence of cell phone calls between each of the co-conspirators and several prepaid cell phones that the prosecution alleged belonged to the defendant. To establish this tie, the prosecution first presented the testimony of Barbara Cooper, custodian of records for T-Mobile, who identified four specific phone numbers tied to four pre-paid cell phones. She explained that when a customer buys a pre-paid phone, subscriber information such as name and

address is not required or verified if given. She also indicated that three of the numbers in question did not contain any subscriber information and that the remaining number was linked with a subscriber named "Christian McGeea" and a date of birth that would have made "Christian McGeea" six years old.

Through the co-conspirators' testimony, the prosecution linked one or more of these pre-paid cell phone numbers to the numbers associated with the defendant in several of the co-conspirators' cell phones, *i.e.,* the numbers that the co-conspirators had in their electronic contact lists that they used to contact Munguia. In so doing, the prosecution entered records and/or photos of the co-conspirator's electronic contact lists and phone logs that were stored in their cell phones, as well as the cell phones themselves.

Finally, the prosecution called Marnie Corbitt, an agent with the Tennessee Bureau of Investigation, to tie the cell phone number evidence together. Corbitt had worked on this aspect of the case by examining the relevant cell phone records, and she testified that during the relevant time period, there were multiple calls between each of the co-conspirators' cell phones and one or more of the T-Mobile numbers the prosecution contended belonged to Munguia. She also explained that Munguia called his girlfriend, Paula Brand, from jail and that the same number he dialed to reach her had been dialed either from or to each of the T-Mobile cell phone numbers, in some cases many, many times, further linking the phone numbers to the defendant.

Before trial, Munguia made a motion *in limine* to exclude the cell phone number evidence as irrelevant and more prejudicial than probative. When arguing the motion at the final pretrial conference, the defendant conceded that the issue was simply one of relevance under Federal Rule of Evidence 403 and that the court would have to wait until the proof came in and make a ruling at that time. During the testimony of the T-Mobile custodian of records, the district judge accepted the exhibits regarding each of the pre-paid phone numbers "subject to the objection that has already been made," presumably referring to the motion *in limine*. Later, during Lopez's testimony, the defendant objected on hearsay grounds to the introduction of the contact list and/or phone logs from the cell phone Lopez used to call the defendant. Although this same type of testimony had come in earlier through Arellano, defense counsel explained that he had forgotten to object at that point. The judge overruled the hearsay objection, explaining that if the logs and contact lists were hearsay, they were admissible under the hearsay exception for "records of regularly conducted activity." The record does not reflect that the defendant renewed his objection when the same type of evidence was introduced during Stevenson's testimony.

During trial, defense counsel asked the judge to issue a material witness warrant for Jose Goicochea, a witness whose presence he had not been able to secure despite a subpoena. Referring to testimony by co-defendant Lopez that he called Munguia to pick him up at some point during the drug deal and that Munguia sent another person to come get him, counsel explained that Goicochea – allegedly the person who picked up Lopez –

was willing to testify that it was not Munguia who sent him. The judge issued the warrant, but Goicochea still did not appear. After the verdict, the defendant made another motion for a warrant to detain a material witness, arguing that Goicochea's testimony could be exculpatory and provide grounds "based on new evidence for a new trial." The district court denied the motion, holding that there was no current proceeding for which the warrant could issue, that there was no reason to believe that the witness could be located at that point in time, and that even if the testimony were helpful, it would be outweighed by the considerable evidence supporting the conviction.

## **DISCUSSION**

The defendant now contends that the district court should have granted his pre-trial motion to exclude telephone records, his motion to exclude hearsay evidence, and his post-trial motion for a material-witness warrant. We conclude that the district court did not err in denying all three motions.

### *The Motion in Limine*

The defendant contends that he "was prejudiced by allowing the jury to hear evidence regarding phone records without ever insuring that they were ever relevant" in the absence of evidence that the records actually pertained to him and his cell phone, citing Federal Rule of Evidence 403. As a result, he argues, the jury heard evidence that was more prejudicial than probative. We review a district court's decision to admit or exclude

evidence for abuse of discretion and, even if an abuse is found, a new trial is not required unless the defendant's "substantial rights" were affected by the admission of the evidence. *See United States v. Bonds*, 12 F.3d 540, 554 (6th Cir. 1993); Fed. R. Crim. P. 52(a). Although we have also held that "a motion in limine does not preserve evidentiary questions for appeal," because the district court in this case accepted the evidence "subject to the objection that [had] already been made," presumably any error was preserved. *See Johnson Controls v. Jay Indus.*, 459 F.3d 717, 728 (6th Cir. 2006) (internal quotation and citation omitted).

Munguia provides no case law in support of his Rule 403 objection. Moreover, contrary to his assertion that the cell phone evidence was irrelevant, he admits in his brief that it "bolstered the credibility of [the co-conspirators] and supported the government in their argument to convict the Appellant." Indeed, the evidence was highly probative as corroboration of the co-conspirators' testimony that they were in contact with Munguia regarding various drug transactions. It was also sufficiently linked to him both through the co-conspirators' testimony that they used the particular numbers to contact Munguia and through the testimony of Corbitt, who studied the phone records and linked each of the pre-paid cell phones to the defendant through his girlfriend's phone number. Munguia's arguments that the evidence was prejudicial and that the jury was confused or misled are neither well-developed nor supported by the record. We conclude that the district judge did not abuse his discretion in admitting the cell-phone evidence.

### The Hearsay Objection

Munguia next argues that the cell-phone contact lists and call logs are hearsay, that they are not subject to a recognized exception to the hearsay rule, and that "Appellant was prejudiced at the court's admission of these cell phone address entries saved in the software of the cell phone because the government used these phone numbers to corroborate [the coconspirator's] statements that the Appellant was involved in the conspiracy [and] [t]he government's case hinged entirely on the credibility of these three witnesses."  We review the district court's decision to admit evidence over a hearsay objection *de novo." United States v. Gaitan-Acevedo*, 148 F.3d 577, 591 (6th Cir. 1998). In order to constitute reversible error, it must appear "more probable than not that the error materially affected the verdict."  *United States v. Hernandez*, 227 F.3d 686, 696 (6th Cir. 2000); Fed. R. Crim. P. 52(a).

Here, the defendant objected to testimony by Lopez regarding the records in question, but not to that by Arellano and Stevenson.  As a result, a more limited review for plain error would be appropriate with regard to the last two witnesses.  In any event, we find no error because the claim fails under either standard.  *See* Fed. R. Crim. P. 52(b).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  We have previously held that "[p]ersonal telephone directories and notebooks are admissible as 'drug records' for non-hearsay purposes of showing that a

conspiracy existed and that a defendant was a member of the conspiracy. *See Gaitan-Acevado*, 148 F.3d at 591; *see also United States v. Chavez*, 229 F.3d 946, 953-54 (10th Cir. 2000) (defendant argued that phone number on scrap of paper was hearsay because it was offered to show that the person who answered the call was a co-conspirator, but the court held that it was properly admitted for the "non-hearsay purpose of linking the co-conspirators," explaining that "[n]o, 'truth' can be gleaned from a mere phone number and thus, the number could not have been submitted for the truth of the matter asserted.") The defendant presents no rationale for distinguishing the cell-phone contact lists and logs from paper-based personal telephone directories or notes introduced for the purpose of establishing a conspiracy, and we see none. We conclude, therefore, that the evidence was properly admissible for the non-hearsay purpose of linking Munguia to his co-conspirators. Although this rationale was not the basis upon which the district court admitted the evidence, we may affirm the district court on any basis apparent from the record. *See United States v. Bercier*, 506 F.3d 625, 629-30 (8th Cir. 2007) (reviewing court is "not bound by the grounds on which the district court admitted the evidence, as it is a well-settled principle that we may affirm a district court's judgment on any basis supported by the record") (internal quotation marks and citation omitted).

**The Material Witness Warrant**

Finally, Munguia contends that his post-trial motion for a material witness warrant to secure the testimony of Jose Goicochea, filed pursuant to 18 U.S.C. § 3144, should

have been granted because Goicochea's testimony would have provided a basis for a new trial. Because the statute provides the district court with the discretion to issue such a warrant upon showing of certain pre-conditions, we review the ruling for an abuse of discretion. *See* 18 U.S.C. § 3144.

The statute provides:

> If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title. No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure.

18 U.S.C. § 3144.

First, it is questionable whether section 3144 is applicable post-trial, *i.e.,* whether there is a "criminal proceeding" within the meaning of the statute at that point in the proceedings. The district judge apparently held that it could not be invoked post-trial. The defendant has not produced any authority to the contrary, and we have found none. Even assuming, however, that the statute is applicable, the defendant's claim fails on other grounds.

"[A]n application for a material witness warrant under § 3144 must establish probable cause to believe that (1) the witness's testimony is material, and (2) it may become impracticable to secure the presence of the witness by subpoena." *United States v. Awadallah*, 349 F.3d 42, 64 (2nd Cir. 2003). Here, the defendant cannot meet the requirement of materiality. The only purpose of the testimony at issue – Jose Goicochea's assertion that somebody besides Munguia sent him to pick up Lopez – would be to impeach Lopez's testimony that he called Munguia to pick him up and that Munguia sent somebody, presumably Goicochea, to do so. But we have held that impeachment testimony alone cannot support a motion for a new trial. *See United States v. Braggs*, 23 F.3d 1047, 1050-51 (6th Cir. 1994). And, given the overwhelming proof of guilt introduced at trial including testimony from three co-conspirators that was both consistent and corroborated by their cell phone records, it is obvious that Goicochea's testimony would not have produced an acquittal – nor would it if the case were retried. For this reason, even if we were to find error in connection with the district court's ruling, the error would necessarily be harmless.

Finally, we note that the record indicates that the defendant failed to comply with the affidavit requirement in section 3144. Although neither the district court nor the parties addressed this issue, counsel for defendant acknowledged at oral argument that no affidavit had been filed with the motion for a material witness. This deficiency in the record provides an additional ground upon which to uphold the district court's ruling.

## **CONCLUSION**

For the reasons set out above, we AFFIRM the judgment of the district court.